DELL, Chief Judge.
National Alcoholism Programs/Cooper City, Florida, Inc., a Florida corporation, d/b/a High Point (High Point) appeals from a final order granting Blue Shield of Northeastern New York’s (Blue Shield) motion to dismiss with prejudice for lack of in person-am jurisdiction. We hold that High Point pleaded and proved sufficient jurisdictional facts to satisfy the requirements of the Florida long-arm statute and the constitutional due process test of minimum contacts and accordingly reverse.
High Point sued Michael Slocum, a New York resident, and his insurance company, Blue Shield, for unpaid medical bills in the amount of $12,700. In its second amended complaint, High Point alleged the following basis for in personam jurisdiction over Blue Shield:
4. Defendant, BLUE SHIELD is a foreign insurance corporation which contracted to provide and has provided hospital expense coverage in Broward County, and is doing business in Broward County, Florida.
5. This Court has personal jurisdiction pursuant to Fla.Stat. § 48.193 over the Defendant, BLUE SHIELD, and venue is proper in Broward County for the following reasons:
a. BLUE SHIELD entered into a contract with HIGH POINT located in Broward County, agreeing to pay HIGH POINT for providing treatment to persons covered under BLUE SHIELD contracts.
b. The agreement between the parties called for Defendant, BLUE SHIELD, to pay benefits to HIGH POINT in Broward County and for HIGH POINT to render medical services in Broward County;
*236 c. Defendant, BLUE SHIELD, solicited the subject contract and business in Broward County, and the parties have been conducting business pursuant to the contract since April, 1990. BLUE SHIELD pays claims to HIGH POINT in Broward County and has paid claims and conducts business with HIGH POINT in Broward County, Florida on this and other matters.
d. The contract was breached by the Defendant, BLUE SHIELD, in Bro-ward County....
High Point rendered treatment to appellee Slocum from March 29, 1990 through April 30, 1990. On February 1, 1990, High Point confirmed Slocum’s policy benefits with a representative of Blue Shield and subsequently sent all bills to Blue Shield for payment pursuant to Slocum’s assignment of benefits under his insurance policy.
As referenced in the second amended complaint, Blue Shield and High Point entered into a provider agreement on April 23, 1990 with an effective date of April 1, 1990. The agreement specifically provided:
1. Purpose. This is an Agreement between the Blue Shield of Northeastern New York, A Division of Blue Shield of Western New York, Inc., (Blue Shield) and High Point of Cooper City, Inc., (the Facility or Substance Abuse Program). The Facility or Program agrees to provide treatment for alcoholism and substance abuse to persons covered under Blue Shield Contracts (called Subscribers) in accordance with the terms and conditions of the Blue Shield Subscriber Contracts and Riders, as amended from time to time. In exchange, Blue Shield agrees to pay the Facility or Program the amounts described below as compensation for providing the treatment for alcoholism and substance abuse.
The terms of the agreement required High Point to submit a plan setting forth a course of treatment on a form provided by Blue Shield, outlined the procedure for submission of claims for reimbursement, imposed a mutual reporting requirement for patient and financial information, permitted auditing by Blue Shield of High Point’s records and provided for termination of the agreement by either party. Additionally, Blue Shield assigned High Point a participating provider number and supplied it with the necessary forms for processing claims under the provider agreement.
Furthermore, the parties’ business relationship extended beyond their contact regarding the instant claim. Before entering into the provider agreement, High Point treated and received payment for one patient from the New York insurance carrier. After entering into the provider agreement, Blue Shield reimbursed High Point for the treatment of three insureds pursuant to the agreement.
In determining whether long-arm jurisdiction can be exercised over a nonresident defendant, the supreme court stated:
First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of [section 48.193, Florida Statutes]; and if it does, the next inquiry is whether sufficient “minimum contacts” are demonstrated to satisfy due process requirements.
Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989) (citing Unger v. Publisher Entry Service, Inc., 513 So.2d 674, 675 (Fla. 5th DCA 1987), rev. denied, 520 So.2d 586 (Fla.1988)).
The totality of Blue Shield’s actions demonstrates that it conducted business in the state sufficient to satisfy section 48.193(l)(a), Fla.Stat. (1991). Blue Shield verified coverage of several insureds who sought treatment at the Florida facility before and after the effective date of the provider agreement, paid claims for such treatment, entered into the provider agreement with High Point whereby it had a continuing obligation to make payments in this state for medical services rendered to the insureds by High Point and supplied High Point with claim forms necessary for future contemplated dealings. Thus, the first prong of the Venetian Salami test has been satisfied.
As to the second level of inquiry . under Venetian Salami Blue Shield argues that the existence of the provider agreement *237 is not sufficient to establish the minimum contacts necessary to confer personal jurisdiction in a Florida court. The Supreme Court’s observations in Burger King v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85. L.Ed.2d 528 (1985), mandate that we reject Blue Shield’s suggestion that we limit the scope of our review solely to the existence of the provider agreement:
At the outset, we note a continued division among lower courts respecting whether and to what extent a contract can constitute a “contact” for purposes of due process analysis. If the question is whether an individual’s contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party’s home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on “mechanical” tests, or on “eoneeptualistic ... theories of the place of contracting or of performance.” Instead, we have emphasized the need for a “highly realistic” approach that recognizes that a “contract” is “ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.” It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties’ actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.
Id. at 478-79, 105 S.Ct. at 2185 (footnotes omitted) (citations omitted). Thus, focusing on “the parties’ actual course of dealing” and their “contemplated future actions,” the record shows that Blue Shield maintained sufficient contacts in this forum to justify an assertion of in personam jurisdiction. The parties executed the provider agreement in Florida; the agreement required services and payment to be performed in this state, and Blue Shield supplied forms for submission of claims for reimbursement. Blue Shield performed under the terms of the agreement when it verified coverage, approved treatment and paid High Point’s claims for three of Blue Shield’s insureds. It would require a strained and illogical interpretation of the facts of this ease for us to conclude that Blue Shield’s conduct within the State of Florida was such that it would not reasonably anticipate being haled into court in the event it breached the provider agreement. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). We emphasize that we express no opinion concerning the question of whether Blue Shield breached its contract with High Point with respect to Slocum’s treatment.
Accordingly, we hold that High Point presented sufficient evidence to establish jurisdiction pursuant to section 48.198(1), Florida Statutes, and to establish sufficient minimum contacts to satisfy the constitutional requirements of due process. We reverse the trial court’s order of dismissal with prejudice and remand this cause for further proceedings.
REVERSED and REMANDED.
HERSEY and STEVENSON, JJ., concur.